Tina **TALLMAN**, et al., Plaintiffs,

v.

**ELIZABETHTOWN POLICE DEPARTMENT**, et al., Defendants.

Civil Action No. 3:02CV–356–H.

United States District Court, W.D. Kentucky.

May 24, 2004.

Evan Taylor, Owensboro, KY, for Plaintiffs.

J. Peter Cassidy, Jr., Lucy A. Ferguson, Stoll, Keenon & Park, Lexington, KY, for Defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

In June 2002, Plaintiffs sued the Elizabethtown Police Department and Officer William Bland ("Bland"), in his official and personal capacities, under 42 U.S.C. § 1983 for violating the rights of Harold G. Lee, Jr. ("Lee") under the Fourth and Fourteenth Amendments to the U.S. Constitution and Sections 1, 2, and 10 of the Kentucky State Constitution after Bland shot and killed Lee following a high-speed chase. Plaintiff Tina Tallman [1] is the representative for Lee's estate, and Plaintiff Tina Clark is the guardian of Savanna Lee and Chelsey Clark, Lee's two minor children. Lee's surviving children also claim loss of parental consortium. Defendants have moved for summary judgment. This case does involve a tragic accident which took the life of Harold Lee. After consideration of the evidence and arguments, the Court concludes that no remedy or cause of action may be sustained under the Constitution or statutes of the United States.

## I.

On July 3, 2001, Lee phoned his friend Randall Babb ("Babb") and arranged for Babb to give him a ride to Elizabethtown from Owensboro. Lee was driving and got lost on the way to Elizabethtown, which extended the trip and caused Lee to become agitated and upset. At this point, Babb assumed the steering wheel. Shortly thereafter, Officer Bland tried to pull Babb over for a traffic violation. Lee began to panic, but Babb pulled over.[2] Almost immediately, his car pulled away again, and a high-speed chase ensued for several minutes.[3] Bland contacted Kentucky State Police for help, and the state police set out "stingers" on the road to puncture the tires and disable Babb's vehicle. Babb's car hit the stingers, and the car came to a stop. Babb exited his car and ran into an adjacent field, where he was apprehended by other officers on the scene. Bland exited his police vehicle and approached Lee in Babb's car with his gun drawn and pointed at Lee. Bland testified in his deposition that he ordered Lee to get out of the car. Lee was nonresponsive to Bland's verbal commands and remained stationary in the passenger seat of the car. His hands were not visible to Officer Bland. The passenger door was closed, but the car window was open. Bland reached through the passenger window with his left hand to detain Lee while holding the gun in his right hand. The gun accidentally discharged, injuring Bland's left thumb and shooting Lee in the head, which killed him.[4]

1. Gail West was the original representative for Lee's estate. Due to health concerns on Ms. West's behalf, however, Plaintiffs moved to replace her with Ms. Tallman. This Court approved the substitution on March 3, 2004.

2. According to Babb's deposition testimony, Lee presumably began to panic because he had placed a satchel in Babb's car trunk, which contained ingredients for making methamphetamine, and was worried that he would be caught by the police during a traffic stop.

3. According to Babb, right after he pulled the car over, Lee shifted the gear from park to drive and managed to hit the gas pedal with his foot even though Babb was driving. Babb testified that, during the chase, he approached speeds of 100 miles per hour.

4. There is no dispute that the discharge of Bland's gun was accidental. Even though Plaintiffs attempt to argue that a reasonable jury could conclude otherwise, Plaintiffs have presented no evidence to suggest that. Bland testified in his deposition that he did not intend to shoot Lee. And Plaintiffs' expert, James Marsh, likewise concluded in his report that Bland unintentionally discharged his gun.

## II.

Summary judgment is proper if the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In applying Rule 56(c), a court views the evidence in a light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court properly enters summary judgment where there is not sufficient evidence in support of the non-movant's case to find that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

## III.

▮ The Supreme Court has made clear that all claims involving the use of excessive force during an arrest, investigatory stop, or other seizure of an individual should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A seizure occurs when the government terminates "freedom of movement *through means intentionally applied.*" *Brower v. County of Inyo,* 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original). The "reasonableness" of an officer's particular use of force to effect a seizure is judged objectively "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. The fact finder must evaluate the officer's actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at

397, 109 S.Ct. 1865. Here, the Court must decide whether a reasonable jury would consider Officer Bland's actions in approaching Babb's car with his gun drawn and pointed at Lee in the passenger seat and in trying to extract Lee from the car to be objectively unreasonable.[5] The Court concludes that no jury could so find. Therefore, no constitutional violation under the Fourth Amendment occurred.

In several relatively similar circumstances, the Sixth Circuit has held that an officer did not act unreasonably when his gun accidentally discharged. In *Pleasant v. Zamieski,* after receiving a report that the plaintiff was attempting to steal a car, the defendant police officer approached the suspect, who was sitting in the stolen car, showed him his badge and gun, and asked the plaintiff to get out of the car. 895 F.2d 272, 273 (6th Cir.1990). The plaintiff refused, and then exited the car and began to climb over a nearby fence. *Id.* When the officer grabbed the suspect from behind, the officer's gun accidentally discharged and fired a shot into the suspect's back, killing him. *Id.* The Sixth Circuit concluded that the officer's actions were objectively reasonable under the circumstances, noting that the court could not use "the wisdom of hindsight" to evaluate the officer's actions. *Id.* at 276. The court remarked that the incident occurred at night. The officer arrived on the scene while a crime was in progress and had no idea what type of weapon, if any, the plaintiff had with him in the car. The court concluded that it was therefore reasonable for the officer to draw his gun. *Id.* And once the plaintiff attempted to flee the scene, the officer had little time to put his gun back in its holster. If the officer had

---

**5.** The Court concludes that a seizure occurred. Disabling Babb's car with "stingers" and pointing a gun at Lee when approaching the car were intentional actions on the part of

the police, which were designed to and which did in fact terminate Lee's "freedom of movement." *Brower,* 489 U.S. at 597, 109 S.Ct. 1378.

taken the time to do so, the suspect would have escaped. The court concluded that the officer's failure to replace his gun in its holster was likewise not unreasonable. *Id.* at 276–77.

In *Leber v. Smith*, two police officers, Sergeant Barrett and Deputy Sheriff Smith, were searching for the plaintiff, whose brother had reported him missing and possibly suicidal, and pursued the plaintiff in a high-speed chase after the police sighted him. 773 F.2d 101, 102 (6th Cir.1985). The plaintiff's car was eventually stopped by a roadblock set up by another police officer. *Id.* Sergeant Barrett pulled up behind the plaintiff's car, exited the car with his gun drawn, and ordered the plaintiff out of the car. *Id.* The plaintiff did not respond. *Id.* Deputy Sheriff Smith then arrived and stopped next to the plaintiff's car. *Id.* He got out of his car with his gun drawn and ran around to the front of his car. *Id.* On the way, he slipped on a patch of ice, stumbled, and accidentally discharged his gun as he fell down. *Id.* The plaintiff was hit by the bullet and, consequently, paralyzed from below his rib cage down. *Id.* The Sixth Circuit concluded that Smith acted reasonably in drawing his gun while approaching the plaintiff's vehicle. *Id.* at 105. The court observed that Smith stated in his affidavit and in his deposition that, even though using a gun during a traffic stop might not be normal procedure, he drew his gun because he apprehended the plaintiff after a high-speed chase, it was dark outside, and the plaintiff was an emotionally unstable, possibly suicidal person whose actions could be unpredictable. *Id.* In light of the circumstances facing Smith at the time, the court could not say that he had acted unreasonably. *Id.*

In our case, Officer Bland faced similar circumstances. Like both the *Pleasant* and *Leber* cases, the incident took place late at night. And, as in *Leber*, Bland and another police officer had been following Babb's car for several minutes in a high-speed chase by the time Babb's car was stopped. As in *Pleasant*, when Bland approached Lee, he could not see Lee's hands and therefore could not verify whether Lee was armed. And like the suspects in *Pleasant* and *Leber*, Lee was not responding to any verbal commands to get out of the car. In addition, Bland testified in his deposition that he was concerned at that moment with the safety of his fellow police officer, who had followed Babb in the dark into an adjacent field without any knowledge as to whether Babb was armed. Bland wanted to secure Lee quickly and make sure that the other police officer was safe and that Babb was apprehended.

In light of the circumstances facing Officer Bland at the moment he stepped out of his car with his gun drawn at Lee and attempted to extract Lee from the car, the Court cannot conclude that he did so unreasonably. Bland had just pursued Lee and Babb in a high-speed chase. He was also confronting several unknowns at the time he approached Lee, namely whether Lee was armed and the whereabouts and safety of another police officer and Babb. The Court cannot review Bland's actions from the safety and calm of the courthouse where the Court has the luxury of time to ponder and scrutinize thoroughly every single action Bland took that night. Without question, for Bland to draw his weapon was a reasonable precaution under the circumstances. No jury could find an intent to use unreasonable means to effect the seizure. The discharge was tragic but accidental. Therefore, no causation exists between the death and an unreasonable act.

Since the Court finds no underlying Fourth Amendment violation, Plaintiffs'

§ 1983 action must likewise fail. This claim must be dismissed.

### IV.

Since the Court concludes that Plaintiffs have no claim under the Fourth Amendment, Plaintiffs' claims against Officer Bland, in his personal capacity, and against the Elizabethtown Police Department ("the Department") must also fail. First, Officer Bland is entitled to qualified immunity for his actions taken against Lee because he did not violate Lee's rights under the Fourth Amendment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Sixth Circuit has outlined the factors to evaluate in a qualified immunity case, the first of which is to decide whether "a constitutional violation occurred." *Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir.1996). Where, as here, no constitutional violation has occurred, Plaintiffs cannot claim that Bland can be held civilly liable under § 1983 for his actions. Second, the Department likewise cannot be held liable for Lee's death under § 1983 because there was no underlying constitutional violation. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam). These claims against Bland and the Department are therefore dismissed.

### V.

Lee's surviving children also claim loss of parental consortium. A § 1983 claim "is entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell,* 199 F.3d 350, 357 (6th Cir.2000). Accordingly, only the victim him or herself, or the estate's representative, may bring a § 1983 action, so the victim's children have no cause of action for loss of consortium for injuries they may have personally suffered. *Id.* Plaintiffs' claim for loss of consortium is therefore dismissed.

### VI.

Finally, Plaintiffs have asserted claims under Sections 1, 2, and 10 of the Kentucky State Constitution; however, they do not list any state statutory vehicle, such as § 1983 for federal constitutional violations, for vindicating state constitutional rights. Section 1983 applies only to deprivations of federal constitutional and statutory rights. *Neinast v. Bd. of Trs. of Columbus Metro. Library,* 346 F.3d 585, 597 (6th Cir.2003). Plaintiffs are therefore without a way to hold Bland or the Department civilly liable for Lee's death under the Kentucky State Constitution. These claims are dismissed with prejudice.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendants have moved for summary judgment and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is SUSTAINED and all Plaintiffs' federal claims are DISMISSED WITH PREJUDICE. Plaintiffs' state claims are DISMISSED WITHOUT PREJUDICE.

This is a final order.